# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

CHERYL C.,[1]

                          Plaintiff,

v.

LELAND DUDEK,
Acting Commissioner of the Social Security
Administration,[2]

                          Defendant.

Case No. 3:24-cv-00163-MMS

## DECISION AND ORDER

Plaintiff has exhausted her administrative remedies and filed a Complaint seeking

relief from this Court, which has jurisdiction to hear the appeal.[3]  The parties did not timely

submit a declination of consent and the case has been assigned to Magistrate Judge

Scoble in its entirety.[4]  Plaintiff's Opening Brief asks the Court to vacate the

Commissioner's decision and remand for further administrative proceedings.[5]  The

Commissioner filed an Answer and a Response Brief in opposition to Plaintiff's Opening

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Leland Dudek is the Acting Commissioner of the Social Security Administration and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Docket 1 (Plaintiff's Compl.).  *See* 42 U.S.C. § 405(g).

[4] *See* Dockets 6, 9.

[5] Docket 13 (Plaintiff's Br.).

Brief.[6]  Plaintiff filed a Reply.[7]  Oral argument was not requested and was not necessary to the Court's decision.  For the reasons discussed below, Plaintiff's request for relief at Docket 13 is GRANTED.

## I. BACKGROUND

On or about June 15, 2016, Cheryl C. ("Plaintiff") protectively filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"),[8] with an alleged onset date of June 4, 2016.[9]  Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021 ("date last insured"), with past relevant work as a controller and budget officer.[10]  As of the date last insured, Plaintiff was

---

[6] Docket 10 (Notice of Lodging Admin. Record); Docket 15 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record."  *See* Fed. R. Civ. P. Supp. Soc. Sec. R. 4(b) under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[7] Docket 16 (Reply).

[8] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought a claim under Title II only.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[9] Administrative Record ("A.R.") A.R. 140, 338.  The application summary, not the application itself, appears in the Court's record and is dated June 20, 2016.  A.R. 338.  Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits.  Therefore, June 15, 2016 is considered the application date.  A.R. 348.

[10] A.R. 3465, 3478.  In order to qualify for disability benefits under Title II, a claimant must have "insured status" and show her disability began by her date last insured.  42 U.S.C. § 423(a)(1), (c)(2), (d)(1)(A).

considered "an individual of advanced age." She subsequently changed age categories to "closely approaching retirement age."[11]

On January 5, 2017, the Social Security Administration ("SSA") initially determined that Plaintiff was not disabled under the applicable rules.[12] Plaintiff testified with representation at a hearing before the assigned administrative law judge ("ALJ") on April 30, 2018, and received an unfavorable decision on July 3, 2018.[13] The Appeals Council vacated this decision on May 27, 2020, and remanded the case for further proceedings.[14] Plaintiff testified at a hearing before the ALJ with representation, this time telephonically, due to the COVID-19 pandemic.[15] On February 25, 2021, the same ALJ issued another unfavorable decision.[16] Plaintiff timely appealed the Commissioner's final decision to this Court.[17] The Court reversed and remanded for further proceedings on November 16, 2022, ordering a new, validly appointed ALJ to: (1) re-evaluate the medical opinions and

---

[11] A.R. 3478. *See* 20 C.F.R. § 404.1563(e).

[12] A.R. 140.

[13] A.R. 108–22, 144–52.

[14] A.R. 159–61. In summary, the Appeals Council ordered the ALJ to: (1) obtain additional evidence concerning Plaintiff's impairments, including, if warranted and available, a consultative examination with psychological testing and medical source opinions about what the claimant could still do despite the impairments; (2) obtain evidence from a medical expert, if necessary; (3) evaluate the nature and severity of Plaintiff's obesity alone and in combination with other impairments; (4) evaluate the mental impairments pursuant to 20 C.F.R. § 404.1520a(c) and provide specific findings and rationale; and (5) obtain supplemental evidence from a vocational expert to determine if Plaintiff has any skills that are transferable with very little, if any, vocational adjustment to other occupations. A.R. 160.

[15] A.R. 78–82. Plaintiff agreed to appear telephonically due to the COVID-19 national public health emergency. A.R. 52.

[16] A.R. 26–40.

[17] A.R. 3562–63.

evidence in the record, including Plaintiff's low cognitive scores and a need for a support or service animal; (2) formulate an RFC including all of Plaintiff's limitations; and (3) proceed through the sequential analysis accordingly.[18]   On May 8, 2024, a new ALJ issued a third unfavorable decision, which became administratively final after 61 days.[19] Plaintiff timely filed a Complaint on July 31, 2024.[20]

## II.    STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[21] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[23]   In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[24]   If the evidence is susceptible to more than one rational

---

[18] A.R. 3565–3603.

[19] A.R. 3461, 3463–80.

[20] Docket 1.

[21] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[22] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[23] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[24] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

interpretation, the ALJ's conclusion must be upheld.[25] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[26] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[27] The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[.]"[28] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[29] However, this duty exists "even when the claimant is represented by counsel."[30]

### III. DETERMINING DISABILITY

The Act provides for the payment of DIB to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[31] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have

---

[25] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020).

[26] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

[27] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[28] *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)).

[29] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[30] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

[31] 42 U.S.C. § 423(a).

insured status under the Act but who are age 65 or older, blind, or disabled.[32]  Disability

is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.[33]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical
> or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied for work.
> For purposes of the preceding sentence (with respect to any individual),
> "work which exists in the national economy" means work which exists in
> significant numbers either in the region where such individual lives or in
> several regions of the country.[34]

The Commissioner has established a five-step process for determining disability

within the meaning of the Act.[35]  A claimant bears the burden of proof at steps one through

four in order to make a prima facie showing of disability.[36]  If a claimant establishes a

prima facie case, the burden of proof then shifts to the agency at step five.[37]  The

Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational

---

[32] 42 U.S.C. § 1381a.

[33] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[34] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[36] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[37] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[38]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[39]  *The ALJ determined that Plaintiff's date last insured was December 31, 2021 and that Plaintiff had not engaged in substantial activity from her alleged onset date of June 4, 2016 through the date last insured.[40]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[41]  *The ALJ determined that, through the date last insured, Plaintiff had the following severe impairments: fibromyalgia, complex regional pain syndrome (CRPS), right shoulder osteoarthritis and partial tear, diabetes mellitus, tinnitus, hearing loss, obesity, knee osteoarthritis, depressive disorder, anxiety disorder, and delusional disorder.  The ALJ determined that Plaintiff's post-abdominal surgery, dysphagia, respiratory impairment, and spinal condition were non-severe impairments.[42]*

---

[38] *Tackett*, 180 F.3d at 1101 (emphasis in original).

[39] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[40] A.R. 3465.

[41] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[42] A.R. 3465–66.

*The ALJ determined that Plaintiff did not have a medically determinable severe shoulder condition during the period at issue.*[43]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[44] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[45]

<u>Residual Functional Capacity.</u> Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[46] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[47] *The ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work with the following limitations: no overhead reaching; frequently reaching at or below shoulder level; frequently pushing and pulling; frequently handling and fingering; tolerating less*

---

[43] A.R. 3466.

[44] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[45] A.R. 3466.

[46] 20 C.F.R. §§ 404.1545(a), 416.945(a).

[47] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

than moderate exposure to pulmonary irritants; working in an environment where acute hearing was not required; no ambulation across uneven surfaces; no engaging in balancing; and using a cane for walking only in the workplace. Plaintiff could understand, remember, and carry out detailed, but not complex, instructions and tasks; use judgment to make detailed but not complex work-related decisions; and have frequent contact with the public, coworkers, and supervisors.[48]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[49] Otherwise, the evaluation process moves to the fifth and final step.[50] *The ALJ determined that Plaintiff was unable to perform any past relevant work.[51]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[52] *Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including statement clerk (DOT #214.362-046,*

---

[48] A.R. 3468.

[49] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[50] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[51] A.R. 3477.

[52] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

*sedentary, SVP 4, 1,400 jobs nationwide), return items clerk (DOT #216.382-058, sedentary, SVP 4, 2,700 jobs nationwide), payroll clerk (DOT #215.382-014, sedentary, SVP 4, 68,000 jobs nationwide), and tax preparer (DOT #219.362-070, sedentary, SVP 4, 45,000 jobs nationwide).[53]*

The ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from June 4, 2016, the alleged onset date, through December 31, 2021, the date last insured.[54]

## IV.  DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges that: (1) the ALJ's analysis of the subjective symptom evidence using a "not entirely consistent" standard conflicts with the "preponderance of the evidence" standard upon which the ALJ is required to base his decision; (2) the ALJ failed to adequately evaluate Plaintiff's pain complaints, which were consistent with her treating physician's opinion; (3) failed to adequately address Plaintiff's fibromyalgia and CRPS, which are diagnosed based on subjective symptoms; (4) failed to consider Plaintiff's exemplary work history; and (5) erred by failing to resolve the conflict between the vocational expert's ("VE's") testimony and the job descriptions in the Dictionary of Occupational Titles ("DOT").[55]  The Commissioner counters that the ALJ: (1) reasonably discounted Plaintiff's self-reports because they conflicted with the medical record and the ALJ's reasoning was sufficiently specific and supported by the evidence; (2) did not need to conduct further analysis of

_____

[53] A.R. 3478–79.

[54] A.R. 3479.

[55] Docket 13 at 5–22.

Plaintiff's fibromyalgia because Plaintiff admitted that medication helped and had gotten her fibromyalgia under control; (3) followed the process outlined in the Social Security Regulations for Plaintiff's CRPS; and (4) adequately addressed the VE's reasonable explanation for any apparent conflict with the DOT, even if the VE's testimony was inconsistent with the DOT.[56]

### 1. "Not Entirely Consistent"

Plaintiff alleges that the ALJ erred when he found that her statements were "not entirely consistent with the objective medical evidence and other evidence[.]"[57] She asserts that the ALJ's evaluation of her symptoms was contrary to SSA policy because it should have been based on a preponderance of the evidence standard.[58] However, the Commissioner correctly points out that the regulations require the ALJ to evaluate the consistency of Plaintiff's statements with the objective medical evidence and other evidence in the record to determine the effect of her symptoms on her ability to work.[59] Moreover, this "boilerplate statement" is "routinely included" by ALJs as an "introductory remark."[60] The Ninth Circuit recently noted that the ALJ's "not entirely consistent" phrasing is often confused with "the ALJ improperly concluding that a claimant's symptom

---

[56] Docket 15 at 2–9.

[57] Docket 13 at 11.

[58] Docket 13 at 11–12.

[59] Docket 15 at 5 (citing 20 C.F.R. § 404.1529(a)).

[60] *See Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020) (citing *Treichler,* 775 F.3d at 1103).

testimony was not fully corroborated by the objective medical evidence" and that ALJs should consider using "simply inconsistent" instead.[61]

In this case, the ALJ evaluated the consistency of Plaintiff's statements with the objective medical evidence, but for the reasons outlined below, he did not take into account other evidence in the record regarding Plaintiff's CRPS symptoms and their effect on her ability to frequently handle and finger.

### 2. Plaintiff's Pain Complaints

On March 27, 2024, Plaintiff testified telephonically with representation at a hearing before a new ALJ. She testified that her fibromyalgia was under control with medication. However, she indicated that, for the most part, her impairments had worsened over time. She testified that her knee, anxiety, and memory problems most significantly affected her ability to function normally. Plaintiff reported having had two surgeries on one knee and one surgery on the other knee. She testified that her CRPS had gotten worse. She reported that it had traveled into her right hand and she thought it also might be affecting her shoulder. She testified that she had surgery for a partially torn right shoulder, which helped for over a year, but she reinjured the shoulder after a fall, which resulted in a rotator cuff tear and a long bone spur, requiring another surgery. She indicated that osteoarthritis affected the use of both hands, along with swelling due to CRPS. She stated that these symptoms prevented her from cutting food and that she required a caregiver 5 days per week to help her pick up heavy things, prepare meals, shop, and do housework. She reported having chronic back pain and neuropathic pain in her legs that came and went. She also reported using a cane to help her walk and to maintain balance.

---

[61] *Smartt v. Kijakazi,* 53 F. 4th 489, 499 n. 2 (9th Cir. 2022) (internal quotation omitted).

She testified that tinnitus caused anxiety and interfered with her sleep. Plaintiff reported wearing a hearing aid. She said that she took medications for anxiety and depression. She testified that hallucinations were no longer an issue because they were controlled with risperidone, but she continued to have anxiety. She also reported having an emotional support animal to help with depression and anxiety.[62]

### a. Two step evaluation

The ALJ's subjective symptom assessment has two steps.[63] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[64] In the first step, the claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[65]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. This standard is "the most demanding required in Social Security cases."[66] Yet, this does

---

[62] A.R. 3498–3516.

[63] *Ferguson v. O'Malley,* 95 F. 4th 1194, 1199 (9th Cir. Mar. 14, 2024).

[64] *Id.* (quoting *Garrison,* 759 F.3d at 1014).

[65] *Garrison,* 759 F.3d at 1014 (internal citations and quotations omitted).

[66] *Ferguson,* 95 F.4th at 1199 (citation omitted).

not mean an ALJ is required to "simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case."[67]

### b. The ALJ's evaluation of Plaintiff's pain complaints

In evaluating a claimant's subjective symptom complaints, an ALJ must consider the entire record, including: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."[68] If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct.[69]

While inconsistency with the objective medical evidence is a clear and convincing reason to discount a claimant's symptom testimony, the ALJ "may not discredit [Plaintiff's] subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."[70] In other words, "an ALJ cannot effectively render a claimant's

---

[67] *Smartt,* 53 F. 4th at 499.

[68] 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3).

[69] *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1162 (9th Cir. 2008).

[70] *Coleman v. Saul,* 979 F.3d 751, 756 (9th Cir. 2020) (citing *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998)); *see also Smartt,* 53 F.4th at 498, citing *Chaudhry v. Astrue,* 688 F.3d 661, 672–73 (9th Cir. 2012) (affirming an ALJ's determination that interpreted and preferred objective medical evidence to subjective testimony); *Burch*, 400 F.3d at 681 (affirming an ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and a claimant's daily activities); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's

subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony."[71] And, in the Ninth Circuit, the ALJ "must identify the specific testimony that [the ALJ] discredited and explain the evidence undermining it."[72] It is improper for an ALJ to discount a claimant's testimony by "cherry-picking the absence of certain symptoms[.]"[73]

Here, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described. The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.[74] Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom allegations.

The ALJ discounted Plaintiff's pain complaints because "contrary to her allegations of daily incapacitating pain throughout her entire body, providers often described her as

---

testimony after "finding no objective medical evidence to support [claimant's] descriptions of her pain and limitations," and "that [claimant] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

[71] *Smartt,* 53 F.4th at 498 (internal citations omitted).

[72] *Lambert,* 980 F.3d at 1268 (citations and alteration omitted). *See also Brown-Hunter,* 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination.").

[73] *Diedrich v. Berryhill,* 874 F.3d 634, 642 (9th Cir. 2017) (internal citations and quotations omitted).

[74] A.R. 3469.

pleasant and in no acute distress at appointments."[75]  The ALJ provided multiple citations to the record.  The relevance of many of these cited records is questionable, as many appear to be from one 10-day hospitalization for abdominal pain requiring surgical intervention.[76]  These same hospital records also show that, while she was pleasant and in no acute distress, she was unable to perform peri-care independently or sit up in bed without assistance in the hospital.[77]  The hospital recommended a cane and home health physical therapy upon discharge.[78]  Moreover, many recent Ninth Circuit district court decisions have held that a chart note of "no acute distress" is not particularly relevant to allegations of chronic symptoms.[79]  However, the ALJ also cites office visits noting that not only was Plaintiff pleasant and in no acute distress, she moved her extremities without apparent weakness, displayed a normal gait, and had normal muscle tone bilaterally.[80]

---

[75] A.R. 3469–70.

[76] A.R. 469–70; *See e.g.,* A.R. 1335–37, 1348, 1353, 1359, 1363, 1375–76, 1399–1400, 1404, 1479–80, 1630, 2205.

[77] *E.g.,* A.R. 1353, 1355, 1363, 1365–66, 1367, 1375–76, 1480.

[78] A.R. 1367.

[79] *See e.g. Troy A.H. v. Comm'r of Soc. Sec.,* Case No. 13-cv-03252-JSC, 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022) ("[T]he term 'acute' in the medical context refers to 'a health effect, usually of rapid onset, brief, not prolonged' . . . Thus, it is questionable whether a chart note of 'no acute distress' is relevant to allegations of chronic symptoms.") (citations omitted); *Mitchell v. Saul,* Case No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020), ("[T]he court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute distress' do not distract from the findings regarding Plaintiff's chronic conditions."), *report and recommendation adopted sub nom. Mitchell v. Berryhill,* 2020 WL 1017899 (D. Nev. Feb. 28, 2020); *Richard F. v. Comm'r of Soc. Sec.,* Case No. C19-5220-JCC, 2019 WL 6713375 at *7 (W.D. Wash. Dec. 10, 2019), ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony ... 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute.") (citation to the administrative record omitted).

[80] *See e.g.,* A.R. 2322–23, 2456, 2606–08, 3107.

Regarding Plaintiff's right shoulder condition, the ALJ noted that after March 2018, "medical records through the date last insured of December 31, 2021 document minimal complaints relating to the right shoulder during appointments, an indication that surgery was successful. Indeed, when examined on January 27, 2022 (i.e., just after the date last insured), she demonstrated near normal right shoulder flexion to 170 degrees and abduction to 175 degrees."[81] Regarding Plaintiff's knee pain, the ALJ pointed to records that showed a normal gait and reported improvement with little pain several months after surgery on the left knee, an Euflexxa[82] injection, and physical therapy.[83]

The ALJ also pointed to evidence in the record that showed greater functionality than Plaintiff alleged. For example, "[c]ontrary to her claims that she is severely limited in her ability to walk and that she requires a cane, she has routinely demonstrated a normal gait, despite not having an assistive device, during examinations."[84] And, "[c]ontrary to her description of diffuse weakness and an inability to lift any significant amount of weight, she has often exhibited normal motor strength throughout her upper and lower extremities upon examinations."[85]

The ALJ included Plaintiff's lower extremity impairments in the RFC by limiting Plaintiff to sedentary work with no walking across uneven surfaces, no balancing, and

---

[81] A.R. 3470.

[82] Euflexxa is used to treat knee pain in patients with osteoarthritis. https://www.webmd.com/drugs/2/drug-94429/euflexxa-intra-articular/details (last visited Jan. 28, 2025).

[83] A.R. 3470.

[84] A.R. 3470.

[85] *Id.*

using a cane for walking at the workplace. He accommodated Plaintiff's shoulder condition by prohibiting overhead reaching.[86] However, for the reasons discussed below, the ALJ erred in rejecting Plaintiff's testimony regarding the severity of her CRPS symptoms.

### 3. Fibromyalgia and CRPS

Plaintiff alleges that the ALJ failed to consider SSR 12-2p and the unique symptoms and diagnostic methods used to evaluate fibromyalgia.[87] The Commissioner counters that "[b]ecause Plaintiff explicitly acknowledged that her fibromyalgia was 'under control,' the ALJ did not need to conduct further analysis of that impairment."[88] Plaintiff also alleges that the ALJ erred by failing to discuss SSR 03-02p and ignored Plaintiff's CRPS symptoms.[89] The Commissioner contends that the ALJ followed the sequential evaluation process required for any medically determinable impairment and appropriately considered the entire record to assess Plaintiff's RFC.[90]

### a. Fibromyalgia

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'"[91] "Typical symptoms 'include chronic pain throughout the body, multiple tender points,

---

[86] A.R. 3468.

[87] Docket 13 at 14–15.

[88] Docket 15 at 6.

[89] Docket 13 at 12–13.

[90] Docket 15 at 6.

[91] *Revels v. Berryhill,* 874 F.3d 648, 656 (9th Cir. 2017) (quoting *Benecke v. Barnhart,* 379 F.3d 587, 589 (9th Cir. 2004)).

fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'"[92]  SSR 12-2p provides guidance on how to establish fibromyalgia as a medically determinable impairment.[93]  Here, the ALJ found Plaintiff's fibromyalgia to be a severe, medically determinable impairment.[94]

SSR 12-2p also explains how the Social Security Administration evaluates fibromyalgia disability claims.[95]  Claims involving fibromyalgia and CRPS are evaluated using the same five-step process "[a]s with any adult claim for disability benefits," and the residential functional capacity assessment must be based "on all relevant evidence in the case record."[96]  However, the Ninth Circuit has specified that "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods . . . The failure to do so is error[.]"[97]  Moreover, in the Ninth Circuit, SSRs are binding on ALJs.[98]

Pursuant to SSR 12-2p, the ALJ is required to "consider the longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a

---

[92] *Id.* (quoting *Benecke*, 379 F.3d at 590).

[93] TITLES II AND XVI: EVALUATION OF FIBROMYALGIA, SSR 12-2p, 2012 WL 3104869, at *1 (S.S.A. July 25, 2012).

[94] A.R. 3465.

[95] SSR 12-2p, at *1.

[96] SSR 12-2p, at *5–6.

[97] *Revels,* 874 F.3d at 662.

[98] *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009) ("SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless.").

person may have 'bad days and good days.'"[99]  The Ninth Circuit has cautioned against relying solely on physical examinations and imaging to discount fibromyalgia claims.[100]

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."[101]  Here, the Commissioner points to Plaintiff's own testimony to justify the ALJ's discounting of Plaintiff's fibromyalgia symptom complaints.[102]  At the May 2024 hearing, the ALJ asked how her fibromyalgia symptoms had progressed over time and Plaintiff testified that Lyrica had "gotten [her fibromyalgia symptoms] under control."[103]

Although the ALJ did not discuss SSR 12-2p specifically, a review of the longitudinal record shows that Plaintiff had a history of fibromyalgia since 2014 (while she was still working) and her physicians continued to prescribe the same dose of Lyrica throughout the relevant disability period.[104]  Moreover, the ALJ specifically accounted for Plaintiff's fibromyalgia in the RFC, along with her knee surgery in May 2021 and history of obesity, by limiting her to standing/walking for no more than two hours in an eight hour work day and allowing for use of a cane at work.[105]  In sum, the ALJ did not err by rejecting

---

[99] SSR 12-2p, at *6.

[100] *Benecke,* 379 F.3d at 594 ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.") (cleaned up) (citation omitted); *Revels,* 874 F.3d at 663 ("[A] person with fibromyalgia may have muscle strength, sensory functions, and reflexes that are normal.") (cleaned up).

[101] *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

[102] Docket 15 at 5–6.

[103] A.R. 3500.

[104] *See e.g.,* A.R. 3384, 3390, 3425, 3920, 3928, 3939, 4372, 4379, 4784.

[105] A.R. 3468, 3474.

Plaintiff's testimony regarding her fibromyalgia and incorporated the associated limitations into Plaintiff's RFC.

    b.    CRPS

According to SSR 03-2p, CRPS is a "chronic pain syndrome most often resulting from trauma to a single extremity" or from "diseases, surgery, or injury affecting other parts of the body."[106]  Symptoms CRPS include "persistent complaints of pain that are typically out of proportion to the severity" of the injury sustained by the individual.[107]  SSR 03-2p also warns adjudicators that "[t]ransient findings are characteristic of [CRPS.]"[108]  Here, the ALJ found that Plaintiff's CRPS was a severe impairment.[109]

According to SSR 03-02p, "once the disorder has been established as a medically determinable impairment, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."[110]  The ALJ should look to the entire record, including objective evidence, the claimant's own statements, treating and examining providers' statements, statements from other persons, and any other relevant evidence.[111]  Here, the ALJ discounted Plaintiff's CRPS symptom complaints based only

---

[106] Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome, SSR 03-02p, 2003 WL 22399117, at *1 (S.S.A. Oct. 20, 2003).

[107] SSR 03-02p, at *1.

[108] SSR 03-02p, at *4.

[109] A.R. 3465.

[110] SSR 03-02p, at *6.

[111] Id.

on objective medical evidence, such as x-rays and examinations showing normal range of motion, normal strength and tone in the bilateral upper extremities, and normal strength in the hands.[112]  But, the ALJ did not take into account the transient findings and symptoms associated with CRPS.  There is other evidence in the record of CRPS specifically affecting Plaintiff's hand functioning.  For example, Plaintiff reported to providers that she had difficulties with flexing her fingers and that her hands were frequently cold.[113] She received three nerve blocks in her left hand to relieve pain caused by CRPS.[114] Moreover, her caregiver observed that Plaintiff rubbed her hands and fingers and could not pick up or hold objects, "not even her pillow."[115]

The ALJ's evaluation ignores the unique symptoms of Plaintiff's CRPS and the SSA's guidance provided in SSR 03-2p.  In light of the "transitory nature" of CRPS, it was error for the ALJ to look only to normal imaging and normal strength and tone in the upper extremities.  Instead, SSR 03-02p "emphasizes that the severity of the disorder can be assessed instead through 'a longitudinal clinical record containing detailed medical observations, treatment, the individual's response to treatment, complications of treatment, and a detailed description of how the impairment limits the individual's ability to function and perform or sustain work activity over time.'"[116]  The ALJ's error is not harmless because he found that Plaintiff retained the ability to frequently handle, finger,

---

[112] A.R. 3471.

[113] *See e.g.,* A.R. 2322, 3325, 4024, 4275, 4291, 4355, 4370–71, 4384–86, 4389, 4448, 5459.

[114] *See e.g.,* A.R. 3358.

[115] A.R. 486.

[116] *Deborah M. v. Berryhill,* Case No. 19-cv-01901-DMR, 2020 WL 7625483, at *6 (N.D. Cal. Dec. 22, 2020) (citing SSR 03-2p).

and reach below the shoulder and each of the jobs listed by the VE require the same.[117] On remand, the ALJ should evaluate Plaintiff's CRPS symptoms using the guidance of SSR 03-02p and reformulate the RFC.

### 4. Plaintiff's Exemplary Work History

The ALJ did not specifically address the quality of Plaintiff's work history in the decision.[118]  Plaintiff asserts that this is legal error because agency regulations, 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling ("SSR") 96-8p and 16-3p, require the ALJ to consider Plaintiff's "exemplary work history" as "it is unlikely someone would trade in their productive, and lucrative, work career for the far less lucrative 'career' of receiving disability benefits."[119]  She alleges that "[h]er exemplary work history is a factor that lends to her credibility, not detracts from it, and certainly such a rule is a more than fair corollary to court decisions which have affirmed an ALJ's reliance upon a claimant's *poor work history* as *detracting* from that claimant's overall credibility."[120]  The Commissioner does not appear to directly respond to these assertions.[121]

---

[117] A.R. 3468.

[118] A.R. 3463–80.

[119] Docket 13 at 17.

[120] Docket 13 at 18 (emphasis in original).  Plaintiff cites to *Thomas,* 278 F.3d at 959 ("In addition to finding no objective medical evidence to support [the claimant]'s descriptions of her pain and limitations, the ALJ found that [claimant] had an extremely poor work history and has shown little propensity to work in her lifetime, which negatively affected her credibility regarding her inability to work") (internal citations and quotations omitted).

[121] Docket 15.

SSR 96-8p provides that an ALJ must consider "[e]vidence from attempts to work" and "work evaluations, if available," as part of the RFC assessment.[122]  SSR 16-3p rescinded and superseded SSR 96-7p (POLICY INTERPRETATION RULING TITLES II AND XVI EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS), eliminating the use of the term "credibility" from the symptom evaluation.  It clarified that the ALJ's "subjective symptom evaluation is not an examination of an individual's character."[123]  SSR 16-3p also references 20 C.F.R. § 404.1529(c)(3),[124] which provides that "all of the evidence presented" will be considered, including information "about your prior work record, your statements about your symptoms, evidence submitted by your medical treating or nontreating source, and observations by our employees and other persons."[125]  However, as a recent district court in the Ninth Circuit pointed out, "the purpose of considering such evidence is to determine whether a claimant's subjective reports 'can reasonably be accepted as consistent with the objective medical evidence and other evidence,' not to conduct an assessment of the claimant's personal character based on [her] work ethic."[126]

---

[122] TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

[123] TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017).

[124] Because Plaintiff filed her claim on June 4, 2016, the Court uses the text of 20 C.F.R. § 404.1529(c)(3), which was effective until March 27, 2017.  See 20 C.F.R. § 404.614.

[125] 20 C.F.R. § 404.1529(c)(3) (Effective until March 27, 2017); SSR 16-3p, 2017 WL 5180304, at *9.  See also Thomas, 278 F.3d at 958–59 (the ALJ "may consider at least the following factors when weighing the claimant's credibility," of which "work record" was one of six factors).

[126] Darren Jeffrey C. v. Kijakazi, No. 21-cv-01012-AHG, 2022 WL 4474261, at *19 (S.D. Cal. Sept. 26, 2022) (citing 20 C.F.R. § 404.1529(c)(3)).

Here, the ALJ determined the period during which Plaintiff ceased engaging in substantial gainful activity.[127] He discussed skills Plaintiff had acquired from her past relevant work.[128] The ALJ considered lay witness statements from her former supervisor and former coworker, which included commentary that, until approximately 2014, Plaintiff "did very well on the job" and "was a hard worker and very competent at her job."[129] The ALJ gave "some weight" to these opinions, but found that the statements were not fully consistent with the longitudinal examination findings or objective testing.[130]

Although SSRs 96-8p and 16-3p and 20 C.F.R. § 404.1529(c)(3) require the ALJ to consider a broad spectrum of evidence, including claimant's work history as part of the overall assessment of the claimant's symptom testimony, district courts have recently held that these regulations do not mandate a specific discussion of work history.[131] Moreover, Plaintiff does not cite to — nor is the Court aware of — any controlling Ninth Circuit authority indicating that an ALJ's failure to explicitly discuss the claimant's work history when evaluating the claimant's subjective symptom testimony constitutes legal error requiring remand.[132] Accordingly, the ALJ did not err by failing to specifically discuss the

---

[127] A.R. 3465.

[128] A.R. 3478.

[129] A.R. 3477. *See* A.R. 457–58.

[130] A.R. 3477.

[131] *See e.g., Darren Jeffrey C.,* 2022 WL 4474261, at *18–19 (S.D. Cal. Sept. 26, 2022) ("The ALJ should no more credit a claimant for a strong work ethic than he should discredit a claimant for untrustworthiness. The claimant's personal character is, in short, irrelevant to the analysis."); *James I v. Kijakazi,* 4:20-cv-0006-SLG, 2021 WL 6050310, at *4 (D. Alaska December 21, 2021) (collecting cases).

[132] In support, Plaintiff cites to *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038–39 (9th Cir. 2007); *Simmons v. Colvin*, No. ED CV 15-01865-SP, 2016 WL 6436829, at *8 (C.D. Cal. Oct. 31, 2016);

quality of Plaintiff's work history as part of the ALJ's evaluation of Plaintiff's subjective symptom testimony.

### 5. Vocational Expert Testimony and the Step Five Finding

Because the ALJ erred by rejecting Plaintiff's testimony regarding her CRPS symptoms, upon re-evaluation, Plaintiff's RFC may change and may require new hypotheticals to be presented to the VE. Consequently, the Court does not reach Plaintiff's allegations that the ALJ failed to adequately address the apparent inconsistencies between the VE's testimony and the job descriptions in the DOT.

### 6. Scope of Remand

Plaintiff asks the Court to enter judgment under sentence four of 42 U.S.C. § 405(g), reversing the SSA's final decision and remanding for further administrative proceedings.[133] The Supreme Court's "ordinary remand rule" applies in this case.[134] Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[135] Having reviewed the ALJ's decision, the administrative record, and the parties' briefs, the Court concludes that the ALJ committed legal error for the reasons set forth above.

---

as well as out of circuit cases from the 1980s. The only Ninth Circuit authority, *Lingenfelter,* 504 F.3d at 1038–39, is inapposite. There, the Ninth Circuit held that the fact that a claimant worked for a brief period of time "alone is not a clear and convincing reason for rejecting [a claimant's] subjective pain and symptom testimony." *Id.* at 1038.

[133] Docket 13 at 23.

[134] *Treichler*, 775 F.3d at 1099 ("The ordinary remand rule applies equally to Social Security cases.").

[135] *Treichler*, 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

However, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, the remedy is reversal and remand to the SSA for further proceedings, including a new hearing and decision.

//

//

//

//

//

//

//

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are NOT free from legal error and are NOT supported by substantial evidence.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 13 is GRANTED.  The Court directs the Clerk of Court to enter judgment in favor of Plaintiff and close this case accordingly.

DATED this 9th day of July 2025, at Anchorage, Alaska.

_____
MATTHEW M. SCOBLE
CHIEF UNITED STATES MAGISTRATE JUDGE